RAFAEL M. SCHUCK, demandante y apelante, *v.* CIRILA VERDEJO, demandada y apelada.

No. 5778.—*Sometido:* Febrero 10, 1932. *Resuelto:* Julio 29, 1932.

*Molina, Dubón & Ochoteco,* abogados del apelante; *Angel A. Vázquez,* abogado del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Rafael M. Schuck instó acción de desahucio contra Cirila Verdejo. Celebrado el juicio, la Corte de Distrito de San Juan dictó sentencia a favor de la demandada, podemos decir que por dos motivos: primero, que la demandada, aunque no era dueña del terreno que se trataba de recobrar, lo era de una casa construída en el mismo, y, por tanto, surgió un conflicto de títulos; y, segundo, que la demandada tenía un derecho de hogar seguro (*homestead*) sobre la casa (*sic*).

Incidentalmente, podemos abrigar la duda de si el derecho de hogar seguro no es incompatible con un derecho dominical actual. En otras palabras, si la demandada tiene el dominio, el dominio absoluto, de una casa enclavada en un predio de terreno, entonces el derecho de hogar seguro se fundiría o confundiría con tal dominio absoluto, y no podría surgir un derecho independiente de hogar seguro. Por supuesto, si una persona es dueña de un predio de terreno o de una casa y se le priva de la propiedad, el derecho de hogar seguro surge, pero entonces esa persona no pretende sostener que es la dueña absoluta. No estamos tratando de excluir defensas inconsistentes, sino meramente demostrar que en lo que a estas dos defensas entre sí respecta, ambas no pueden coexistir.

La demanda, examinada y declarada buena por la corte inferior, era una ordinaria de desahucio para recobrar la posesión de cierta parcela de terreno. En un caso usual, ese pleito daría al demandante, si resulta victorioso, la posesión del terreno y de todo lo enclavado en él.

Leída cuidadosamente, la contestación sólo alega un derecho de hogar seguro. Admite que la propiedad que había pertenecido a Cirila y Petronila Verdejo fué adquirida por el Sr. Molina sin perjuicio del derecho de hogar seguro que Cirila tenía. Esto tendería a admitir—si es que no constituía una admisión directa—que el dominio de la casa había pasado a Molina.

Este tribunal revocó la sentencia (ante, p. 68), aceptando lo dicho en la opinión de la corte inferior de que la demandada había vivido en la casa en cuestión durante treinta años, y que había hecho reparaciones en la misma y la había ampliado. No consideramos que esto constituyera suficiente prueba demostrativa de un título a la casa, cuando, según expresó la corte, el terreno pertenecía a otra persona, el demandante en este caso. Resolvimos que la regla era que lo accesorio sigue a lo principal.

La apelada no compareció a la vista de este caso ni radicó alegato, pero ahora ha presentado moción de reconsideración. Llama la atención hacia el hecho de que varios testigos dijeron que ella era la dueña. Esta corte declaró, sin embargo, que la presunción es que toda casa enclavada en un predio de terreno pertenece al dueño de éste, y esta presunción no fué destruída por manifestaciones contenidas en el récord en el sentido de que la demandada construyó la casa y era dueña de la misma.

■■ Pedro Arroyo era originalmente el dueño del terreno de que se trata. El lo hipotecó. En ejecución del crédito hipotecario, el terreno le fué vendido al Sr. Molina. El remate se efectuó en julio 15, 1920. Parece que para aquel tiempo ya Pedro Arroyo había muerto y que él había dejado un testamento por virtud del cual el título de sus bienes pasó a su esposa Petronila Verdejo, y a su hija de crianza Cirila Verdejo. Después de la subasta, el Sr. Molina tramitó un expediente de dominio en el que Petronila y Cirila Verdejo fueron debidamente citadas y tuvieron la oportunidad de

defenderse. Asimismo parece desprenderse de los autos que Petronila y Cirila Verdejo iniciaron para sí un procedimiento de dominio que fué posteriormente abandonado.

A tenor del artículo 368 del Código Civil, cuando un predio de terreno se vende directamente o en subasta, la presunción es que lleva consigo todo lo enclavado en él. Convenimos con la apelada en que esta presunción es controvertible.

La evidencia tendió fuertemente a demostrar que al tiempo del remate había una casa vieja en el terreno, donde Pedro Arroyo había residido con varias personas que de él dependían para su subsistencia. Petronila Verdejo continuó viviendo en esta casa después del fallecimiento de su marido. Aparentemente, después de la muerte de Petronila Verdejo, y, desde luego, con posterioridad a la subasta, Cirila Verdejo, quien había vivido en la casa en vida de Pedro Arroyo y Petronila Verdejo, continuó habitándola con algunas o todas las personas dependientes que habían residido allí con Pedro Arroyo y Petrolina Verdejo.

Algún tiempo después de la venta en pública subasta, Cirila Verdejo, según propia admisión, destruyó la casa vieja y construyó una enteramente nueva.

Mientras ocupaba la silla testifical, el Sr. Molina dijo:

"Se renunció cualquier derecho de 'homestead' o cualquier derecho de cualquier género que pudiera alegar Petronila Verdejo o Cirila Verdejo o cualquiera otra persona en relación a la finca vendida a Henry G. Molina, en consideración a que yo les dejara vivir en ese sitio hasta tanto no me fuera necesario sacar la casa de ahí."

Parece ser también que el demandante no estaba haciendo alegación alguna respecto al dominio de la casa como tal, sino que insistía que debía ser removida.

La demandada apelada sostuvo que el título a la casa dimanó de los actos de Cirila Verdejo. No vemos cómo la edificación de una casa en terrenos pertenecientes a otro puede impedir que el dueño recupere la posesión del sitio va-

liéndose de un desahucio, a menos que el demandado tenga algún título existente.

Los autos no revelan que la demandada se fundaba en la alegada promesa del Sr. Molina. Por el contrario, ella se basaba y se basa en su alegado derecho de hogar seguro. Si ella hubiera renunciado su derecho de hogar seguro merced a la supuesta promesa de Molina, posiblemente podría reclamar, lo que no ha hecho, algún derecho nacido de un contrato o permiso para permanecer en el terreno.

Suponiendo tal defensa, entonces debió haber sido planteada en el procedimiento de desahucio. En la corte inferior, el caso fué fallado exclusivamente sobre la teoría de un conflicto de títulos. Cualquier derecho a la posesión que no origine título debe resolverse en el pleito de desahucio.

La definición del desahucio es como sigue:

"Sección 2. Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas, puestos por el propietario en sus fincas, y cualquiera otra persona que detente la posesión. material o disfrute precariamente, sin pagar canon o merced alguna." Compilación, sec. 1626.

Los tribunales de Puerto Rico han resuelto consistentemente que los conflictos de títulos no pueden ventilarse en pleitos de desahucio. Bajo este principio, cualquier apariencia razonable de título o derecho dominical podría frustrar el pleito. Si, independientemente de una alegación de título, alegaciones relativas a un derecho de posesión, sin ser determinadas, pudieran vulnerar un procedimiento de desahucio, entonces se destruiría el propósito de la ley. La demandada debió alegar y probar un derecho de posesión, y entonces esta cuestión pudo haberla resuelto la corte inferior.

La apelada también hizo gran hincapié en el caso de la *Ermita de Nuestra Señora* v. *Collazo,* 41 D.P.R. 596. En aquel caso había inscrito un título posesorio sobre la casa, y este tribunal estaba bajo la impresión de que no podía resolverse en un procedimiento de desahucio la cuestión re-

lativa al título de la casa. Nos sentimos obligados a resolver que aquella decisión no puede invocarse como autoridad para impedir que un demandante recobre la posesión de sus terrenos, bajo los hechos de este caso. Además, la propiedad fué finalmente inscrita, y nada hay en los autos que demuestre que Rafael M. Schuck, quien compró el terreno a Molina, tenía conocimiento o noticia de las condiciones bajo las cuales Cirila Verdejo vivía en la finca.

■ ■ Cirila Verdejo no adquirió ningún derecho de hogar seguro. Para la época de la subasta, si bien ella tenía algún título en la propiedad, no era cabeza de familia. Petronila Verdejo lo era. Las autoridades son claras en el sentido de que el derecho de hogar seguro debe, a fin de que pueda ser concedido, existir en la fecha en que tuvo lugar la venta en ejecución. *Garner* v. *Freeman,* 118 La. 183, 185; *Tuttle* v. *Howe,* 14 Minn. 113; *Zander* v. *Scott,* 46 N. E. 2; 13 R.C.L. 601, sec. 64, y notas. Es igualmente claro que aunque Cirila Verdejo era hija de crianza tanto de Pedro Arroyo como de Petronila Verdejo, no era hija de Petronila Verdejo, y, por consiguiente, cualquier derecho de hogar seguro que hubiese habido no pasó a ella.

*Bajo estas circunstancias, no vemos motivo alguno por el cual no debió prevalecer la acción de desahucio, y, por tanto, debe declararse sin lugar la moción de reconsideración.*

Los Jueces Presidente Señor del Toro y Asociado Señor Hutchison disintieron.*